UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL LEE MOONEY,

    Plaintiff,

Case No. 1:12-cv-267

Hon. Gordon J. Quist

v.

ROBERT SUTHERLAND,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Robert Sutherland's motion to dismiss based on res judicata (docket no. 21).

**I.    Background**

This is plaintiff's second lawsuit filed against Sutherland, whom plaintiff identified as the acting inspector at the Michigan Reformatory (RMI). In an earlier lawsuit, *Mooney v. Caruso et al.*, 1:11-cv-187 (W.D. Mich.) ("*Mooney I*"), plaintiff sued Sutherland and other MDOC employees. The court summarized plaintiff's claims alleged against Sutherland in *Mooney I* as follows:

> Plaintiff currently is serving prison terms of 30 to 60 years and life, imposed after he pleaded guilty in 1990 to armed robbery and first-degree criminal sexual conduct. Sometime after he was incarcerated, Plaintiff became a confidential informant in an effort to earn a pardon or commutation of his sentence. He infiltrated gangs and, because of his activities, was made the subject of a death order and a murder contract by the Insane Spanish Cobras and the Chaldean Mafia. Plaintiff alleges that he was transferred to RMI for his safety. He contends, however, that prison gangs and organizations routinely keep tabs on his place of incarceration through the MDOC's OTIS (Offender Tracking Information System) website.

> After Plaintiff arrived at RMI, Defendants were not responsive to his attempts to provide information obtained from his confidential-informant role. He alleges that Defendants thereby prevented him from meeting his goals and objectives as an informant. According to the complaint, Plaintiff learned of a planned assault by the Latin Counts on another informant, whom Plaintiff knew as "Big Moe." Plaintiff attempted to contact Defendant Sutherland, but he was unsuccessful. Big Moe was slashed across the throat before Plaintiff could reach anyone. . . .
>
> Plaintiff filed for a pardon or commutation, advising the parole board and governor about his work as a confidential informant, the continuing threat against him, and his loss of contact with his family caused by his need to sever relationships in order to protect his family. He also expressed his frustration with having his information ignored, causing others to be hurt. Plaintiff then learned that an Insane Spanish Cobra member named McGowan was stalking Plaintiff to stab him. Plaintiff told officer Brown about the threat, and Brown "made every attempt to keep [Plaintiff] safe from harm." (Compl., Page ID #6.) Plaintiff also spoke with Defendants McCaulley and Sutherland, who showed Plaintiff some photos. Defendants acted like they had not previously spoken with Plaintiff. Plaintiff informed Defendants that McGowan was planning to attack Plaintiff, but that McGowan himself was at risk because McGowan was unaware that those he had asked for a weapon were plotting against him. Plaintiff alleges that, by providing information to McCaulley and Sutherland, he was trying to protect McGowan from the other prisoners. Sutherland approached McGowan and asked him if he wanted protection. During his contact with McGowan, Sutherland showed McGowan Plaintiff's picture. McGowan refused protection and began to spread word that Plaintiff had snitched on him. Plaintiff subsequently approached Defendant Kipp, again seeking protection for McGowan because McGowan was targeted for stabbing by the Latin Count Alliance. Kipp refused to intervene. McGowan was knocked out as he left the dining hall. McGowan then was placed in segregation. After McGowan was released from segregation, he renewed his threats against Plaintiff, which led to a gang fight between Latin Counts and the Gangster Disciples on January 19, 2011.
>
> Plaintiff complains that Defendants did not use his information, causing others to be injured or killed. He contends that Defendants' failure to investigate the reported conspiracies constitutes indifference to the risks Plaintiff has taken to be a confidential informant. On January 20, 2011, Plaintiff was transferred to LRF. (Notice of Pl's Change of Address, Page ID#22.)

*Mooney I* (Opinion at pp. 2-4, April 15, 2011) (docket no. 8). The court dismissed all defendants, leaving only plaintiff's claims against defendant Sutherland. *Id.* (Order, April 15, 2011) (docket no. 9).

2

Sutherland moved for summary judgment on both lack of exhaustion and on the merits of plaintiff's Eighth Amendment claim (i.e., that he was deliberately indifferent for failing to protect plaintiff from violence at the hands of other prisoners). *Id.* (Motion and Brief, July 12, 2011) (docket nos. 13 and 14). The magistrate judge issued a report recommending that Sutherland's motion be granted on both grounds. With respect to the exhaustion issue the magistrate judge observed that:

> Pursuant to MDOC policy, Plaintiff was required to resolve this matter through the grievance process. Plaintiff concedes that he failed to do so. The Court, therefore, finds that Plaintiff has failed to properly exhaust his claim against Defendant Sutherland. Accordingly, the undersigned recommends that Plaintiff's claim against Defendant Sutherland be dismissed without prejudice for failure to exhaust administrative remedies.

*Mooney I* (Report and Recommendation at p. 9, Dec. 2, 2011) (docket no. 20).

With respect to the merits of plaintiff's claim against Sutherland, the magistrate judge observed that:

> To prevail on his claim that Defendant failed to protect him or subjected him to harm, Plaintiff must establish that Defendant was deliberately indifferent to "a substantial risk of serious harm" to Plaintiff. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 828). To establish that Defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).
>
> Defendant Sutherland has submitted an affidavit in support of his motion for summary judgment. (Dkt. #14, Exhibit C). Defendant asserts that Plaintiff never contacted him concerning his actions or "agenda." Defendant asserts that he was never informed by Plaintiff that there existed a "hit out on him." Defendant further asserts that he neither spoke with Plaintiff nor showed Plaintiff's photograph to an inmate McGowen. *Id.*
>
> The only evidence that Plaintiff has submitted in opposition to Defendant's motion for summary judgment is a copy of what Plaintiff purports is a "prisoner pass." (Dkt. #16, Exhibit B). Plaintiff asserts that this prisoner pass was completed

> by "Regular Unit Officer Brown" and subsequently signed by Defendant Sutherland on November 8, 2010. According to Plaintiff, this evidence establishes that Defendant Sutherland called Plaintiff to his office, as alleged in his complaint.
>
> In the Court's estimation, the evidence submitted by Plaintiff establishes at most that Sutherland signed a prisoner pass apparently authorizing Plaintiff to proceed from one area of the facility to another and then return. The fact that Sutherland may have signed a prisoner pass hardly establishes that Sutherland spoke with Plaintiff about anything, let alone the matters alleged in Plaintiff's complaint. Moreover, even if the Court assumes that Defendant signed a prisoner pass such in no way calls into question Defendant Sutherland's assertion that he never showed Plaintiff's photograph to inmate McGowan. As Plaintiff's claim against Defendant Sutherland is based on the allegation that Sutherland jeopardized Plaintiff's safety by showing McGowan Plaintiff's photograph this unrefuted evidence is a sufficient basis to grant Defendant's motion for summary judgment. While Plaintiff has had ample opportunity to marshal evidence to support the allegations in his complaint, he has failed to do so. Accordingly, the undersigned recommends that Defendant Sutherland's motion for summary judgment be granted.

*Id.* at pp. 9-11.

In his objections to the report and recommendation in *Mooney I*, plaintiff argued that there was a procedural default which prevented the Court from addressing the merits of his case. *See id.* (Motion and Memorandum, January 17, 2012) (docket nos. 28 and 29). In his objections, plaintiff relied in part on the Sixth Circuit's opinion in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010). In *Reed–Bey*, the prisoner appealed a district court's judgment dismissing his § 1983 lawsuit against Michigan prison officials on the ground that he did not exhaust his claim as U.S.C. § 1997e(a) required. *Reed-Bey*, 603 F.3d at 323. The Sixth Circuit reversed and remanded after concluding that the prisoner had exhausted his claim because the MDOC opted to dismiss his grievance on the merits rather than to invoke its procedural bar. *Id.* at 323-26. In reaching this determination, the Sixth Circuit observed that "the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." *Id.* at 325.

4

The Court in *Mooney I* rejected plaintiff's contention that *Reed-Bey* prevented the Court from reaching the merits of his claim, stating:

> Plaintiff's application of *Reed-Bay* [sic] to the facts of his case lacks merit. Unlike in *Reed-Bay*, where the MDOC evaluated the plaintiff's grievance through Step III of the grievance process, the exhibit attached to Plaintiff's memorandum putatively demonstrates that Plaintiff has completed only Step I of the MDOC's grievance procedure in this case (Ex. A, Dkt 29-1 at 2-3). Plaintiff submitted no other evidence demonstrating that he pursued the grievance through all three steps of the grievance process. Indeed, Plaintiff asks this Court to "hold this suit in a Preliminary Injunction while Plaintiff completes the formal Grievance Procedure" (Pl. Obj., Dkt 21 at 3). Plaintiff's objection, therefore, is denied.

*Mooney I* (Opinion and Order at pp. 2-3, Feb. 8, 2012) (docket no. 35).

The Court adopted the Report and Recommendation, overruling plaintiff's objections and stating in pertinent part that "Plaintiff's proofs, even if properly submitted at this stage of the litigation, do not demonstrate a result contrary to that recommended by the Magistrate Judge." *Id.* (Opinion and Order, Feb. 8, 2012). The court granted Sutherland's motion on both grounds and entered a judgment in favor of Sutherland. *Id.* (Opinion and Order, Feb. 8, 2012) (Judgment, Feb. 8, 2012) (docket no. 36). Plaintiff did not appeal the judgment.

About six weeks later, on March 20, 2012, plaintiff filed the present lawsuit against Sutherland ("*Mooney II*"). *See Mooney II* (Compl.) (docket no. 1). In *Mooney II*, plaintiff alleged the same cause of action against Sutherland as alleged in *Mooney I*:

> On 11/08/10 I was sent to Acting Inspector Robert Sutherland's office by a handwritten inmate pass, because I was being targeted for an assault by a gang member, who was ordered to stab me. Upon learning that there was a threat against my life, I went directly to Regular Unit Officer Brown (RUO BROWN) for help. He then made the necessary calls and arrangements for an immediate meeting between myself and the named defendant. RUO Brown is a witness for this Plaintiff, and was trying to do everything in his power to protect not only myself but the inmate being sent to hit me, who was identified as Heath McGowan. I was able to I.D. Heath McGowan when Inspector Sutherland showed me a MDOC OTIS photo of him. I explained to the Defendant that I was a CI with a lot of people out to try and harm

5

me; and asked him to contact my handler ADW RUTTER at the Alger Facility, and
even the Directors office, because they knew of the danger that I am in. We spoke
for nearly a half-hour or so, and he said that he would take care of everything, and
make sure that I would be kept separated from my enemies. I told the defendant that
this was not a game, and that Heath McGowan had a photo of me, the hit was serious
and that I wanted to make sure that not only was I PROTECTED but that Heath
McGowan was also. As a CI I became connected to gangs and their members who
were ready to assault Heath Mcgowan for ignorantly telling them that he was there
to do a hit on me! Heath McGowan did not even know that I was onto him. So I put
faith in everything the acting-inspector had said he would do. After the meeting I
went back and talked to RUO Brown and told him how the defendant said he would
take care of everything, and of course thanked the Officer. Well after I left the
defendant's office the Defendant called Heath McGowan to his office and had asked
him if he wanted protection, and showed him a OTIS photo of me. The defendant
did not consider the issue at hand or even think that he just fronted me off placing
me in even greater danger by making it look as if I had reported Heath McGowan to
the Prison Staff. So now the hit man was not only aware that I was on to him, he
also thought I was telling on him, which he spread to the prisoners that would listen
to him. . . .

The Defendant acted with deliberate indifference, and negligently placed me
in further danger than I already was. The Defendant did not in any shape or form
protect me, but rather placed me in further danger and then sent me to face off with
my enemies, violating my 8th Amendment Right.

*Id.*[1]

## II. Motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(6)

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

---

[1] It is unclear as to why the Clerk's Office did not assign *Mooney II* to the district judge who ruled on *Mooney I* pursuant to W.D. Mich. LCivR 3.3.1(d)(i) ("Refilings"), or refer *Mooney II* to a magistrate judge to determine whether it was related to *Mooney I* pursuant to W.D. Mich. LCivR 3.3.1(d)(iii) ("Related Cases").

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendant seeks to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of res judicata.

> Pursuant to the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citations omitted). For res judicata to apply, the following elements must be present:
>
> > (1) a final decision on the merits by a court of competent jurisdiction;
> > (2) a subsequent action between the same parties or their "privies";
> > (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Board of Education*, 570 F.3d 775, 776 (6th Cir. 2009), quoting elements from *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997). "The fundamental function of the doctrine of res judicata is to prevent the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy." *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). The objective of the doctrine of res judicata "is to give finality to prior judgments and put an end to litigation." *Id.*

Here, plaintiff has alleged the same Eighth Amendment claim against Sutherland in *Mooney II* as he alleged in *Mooney I*. Based on the judgment entered in *Mooney I*, the Court concludes that Sutherland has established the four requirements for res judicata. *See Bragg*, 570 F.3d at 776. First, a court of competent jurisdiction made a final decision on the merits in *Mooney I*. Second, this is a subsequent action between plaintiff and Sutherland, who was one of the defendants in *Mooney I*. Third, plaintiff's Eighth Amendment claim against Sutherland alleged in

7

*Mooney II* was litigated in *Mooney I*. Fourth, there is an identity of the causes of action, i.e., plaintiff's claim against Sutherland in *Mooney II* is the same claim that was resolved in Sutherland's favor in *Mooney I*.

In his response, plaintiff again contends that his failure to exhaust grievances constituted a "procedural default" and that due to his default, the court had no jurisdiction to address the merits of his claim against Sutherland. *See* Plaintiff's Response (docket no. 24). The Court rejects plaintiff's arguments for the same reasons as expressed in *Mooney I*. Furthermore, the grant of summary judgment in *Mooney I* resulted in a final judgment on the merits under Fed. R. Civ. P. 54. If plaintiff disagreed with entry of that judgment, then he should have appealed it, rather than simply re-filing the same lawsuit against Sutherland. Accordingly, defendant's motion to dismiss on grounds of res judicata should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Sutherland's motion to dismiss based on res judicata (docket no. 21) be **GRANTED** and that this action be **TERMINATED**.


Dated: August 20, 2013                     /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).